UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ICS NORTH AMERICA CORP.,

       Plaintiff

v.

COLLAGE.COM, INC.

       Defendant.

_____/

Case No. 19-11521

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER ON DEFENDANT'S MOTION TO
DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 9)**

## I.    PROCEDURAL HISTORY

Plaintiff, ICS North America Corp. (a/k/a "Ramco") filed a complaint against Collage.com, Inc. on May 23, 2019.  (ECF No. 1).  Ramco filed an amended complaint on June 26, 2019.  (ECF No. 7).  On July 15, 2019, Collage filed a motion to dismiss and for summary judgment.  (ECF No. 9).  The court granted to Ramco leave to conduct limited discovery relating to the motion for summary judgment.  (ECF No. 26).  This matter was reassigned to the undersigned on January 31, 2020.  After a status conference on February 21, 2020, the parties were permitted to file supplemental post-discovery briefs, which they did in March 2020.  (ECF Nos. 34, 35).  On June 11, 2020, the court held a hearing on the pending motion to dismiss and for summary judgment.  (ECF No. 41).  The parties filed brief post-hearing supplements.  (ECF Nos. 43, 44).

For the reasons set forth below, the court **GRANTS** defendant's motion to dismiss in part, **HOLDS IN ABEYANCE** the motion to dismiss the fraud claim, and **DENIES** its motion for summary judgment.

## II.   FACTUAL BACKGROUND

Collage is a custom photo products company that operates an internet website to sell, among other products, personalized blankets and pillows.  (ECF No 7, ¶ 7).  Ramco is an apparel and textile manufacturer.  *Id*. at ¶ 6.  The parties entered into a Supplier Fulfillment Agreement (SFA) on April 1, 2018, for the on-demand production of blankets and pillows marketed and sold by Collage.  *Id*. at ¶¶ 8, 46.  On October 23, 2018, the parties executed an addendum to the agreement (Addendum).  (ECF No. 7, ¶ 8).  The Addendum superseded certain terms of the SFA.  Under the SFA, Ramco "shall offer for sale the Products listed in Exhibit A [blankets and pillows] and provide custom printing Services for said Products to Fulfill Product Orders submitted by Collage at Supplier's [Ramco's] processing facilities in Concord, NC."  (ECF No. 9-1, § IV.a.1.).  Ramco agreed to fulfill custom printing of "such quantities" of its made-to-order blankets and pillows "as Collage deems necessary to fill Product Orders."  *Id*.  Because Collage's business turns on timely delivery of its products to its customers, the parties agreed that time was of the essence.  (ECF 9-1, Ex. B, § I.a.).  The

SFA mandates that each order must meet Fulfillment Deadlines (with "Fulfillment" meaning printed and picked up by the shipping carrier within three business days) or else Ramco is required to upgrade shipping to an expedited method corresponding to the delay in processing time, and Ramco is responsible for the incremental cost of the upgraded shipping method (e.g., if fulfilled one day late, must upgrade to 2-day shipping instead of the original 3-day shipping method).  (ECF No 9-1, Ex. B, § I.c.; Ex. 2, § II.a.1.).  If the order is fulfilled so late that no shipping method would result in the customer receiving the order by the date it should have been delivered based on the order's original shipping method, then Ramco must pay the full cost of next-day delivery and must credit Collage the full cost of the product.  (ECF 9-2, Ex. B, § II.a.2).  And, if Ramco fails to upgrade the shipping method to an expedited method for a late order, Ramco must credit Collage the full cost of the order plus the amount an expedited shipping method would have cost if Ramco had actually upgraded to the applicable shipping method required by Table 1 of the Agreement.  (ECF No. 9-2, § II.a.3).

There are exceptions though to Ramco incurring these credits.  (ECF No. 9-1, Ex. B, § II.b)  One exception is where Collage submits monthly orders totaling greater than 120% of the Sales Forecast.  The SFA provides that "Collage will provide Supplier [Plaintiff] with monthly forecasts . . . for planning purposes[,]" but that "the Sales Forecasts(s) provided by Collage are estimates of Collage's

expected Product Order volumes and are not maximum estimates of Product Order volume." (ECF No. 9-1, Ex. B, §§ III.a, III.b.). According to Collage, rather than affecting the total number of orders Collage is able to submit, the role of the Sales Forecast is to cut off the incursion of credits in favor of Collage once submitted orders exceed 120% of the forecast. (ECF No. 9-1, Ex. B, §§ III.d, § II.b.3).

Ramco's breach of contract and tort claims are based on allegations that prior to and at the time the SFA was executed, Collage repeatedly misrepresented to Ramco that it would aggressively market and sell blankets. (ECF No. 7, ¶¶ 5,11). Ramco also says that Collage stressed the importance of blanket sales to Ramco. (ECF No. 7, ¶ 12). Ramco relied on these representations and invested heavily in additional equipment and product. (ECF No. 7, ¶ 15). Ramco also expedited the order of additional blankets to prepare for the increased blanket production. (ECF No. 7, ¶ 16). Ramco says it would not have entered into the SFA or invested heavily in the manufacture of blankets but for Collage's representations. (ECF No. 7, ¶ 17). According to Ramco, Collage never marketed or advertised blankets as it promised. (ECF No. 7, ¶ 18). Instead, the company baited Ramco into believing it would aggressively market and advertise blankets when it knew this was not true. (ECF No. 7, ¶¶ 19-20). Collage's real intention was to lure Ramco with the promise of blankets when it really intended to focus on the sale of labor-intensive and costly pillows. *Id*.

In late November 2018, Collage ran a sales and promotional event focused exclusively on the sale of pillows.  (ECF No. 7, ¶ 21).  Contrary to its previous representations to Ramco, Collage made no attempt to market the sale of blankets in the same manner.  (ECF No. 7, ¶ 22).  Under the SFA, Collage was obligated to advise Ramco of these sales and promotional events but never did.  (ECF No. 7, ¶¶ 23-25).  Collage's sales and promotional event brought in excessive pillow orders far exceeding the amounts it previously represented to Ramco.  (ECF No. 7, ¶ 26).  Further, after submitting its excessive orders, Collage routinely modified the production schedule.  (ECF No. 7, ¶¶ 29-30).  An additional wrinkle occurred when Ramco's facility was forced to close for several days because of a winter storm that caused a state of emergency throughout North Carolina.  (ECF No. 7, ¶¶ 33-36).  This unplanned closure placed additional production pressures on Ramco.  Despite it all, Ramco produced all of the orders Collage submitted.  (ECF No. 7, ¶ 38).  Collage has not advised Ramco of any customer who did not receive the products it produced.  (ECF No. 7, ¶ 39).  While Collage commended Ramco for its "great efforts" and the quality of the pillows it produced, it nonetheless refused to pay Ramco for any of the work it performed during this period.  (ECF No. 7, ¶¶ 40-41).  Ramco calculates that Collage owes Ramco almost $1,000,000 as a result.  (ECF No. 7, ¶¶ 5, 41).

## III. ANALYSIS AND CONCLUSION

### A. Standards of Review

#### 1. Rule 12(b)(6)

Collage has moved to dismiss certain of Ramco's claims and to obtain summary judgment on others. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

   2. Rule 56

   When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986)).  Furthermore, the evidence and all reasonable inferences must be

construed in the light most favorable to the non-moving party.  *Matsushita Elec.

Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue then shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine

issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative showing

with proper evidence and to do so must "designate specific facts in affidavits,

depositions, or other factual material showing 'evidence on which the jury could

reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th

Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to

demonstrate the minimal standard that a jury could ostensibly find in his favor.

*Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800

(6th Cir. 2000). However, mere allegations or denials in the non-movant's

pleadings will not satisfy this burden, nor will a mere scintilla of evidence

supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

B.   <u>Fraud</u>

Collage moves to dismiss Ramco's fraud claim for three reasons. First, Collage argues that Ramco did not plead the claim with the particularity required

by Federal Rule of Civil Procedure 9(b).  Second, Collage maintains that any fraud claim is vitiated by the merger clause in the parties' written contract.  And third, Collage asserts that Ramco's fraud claim is based on the nonperformance of future promise, which is insufficient to state a fraud claim under Michigan law.

According to Collage, Ramco's allegation that "[p]rior to and after executing the SFA, Collage . . . represented that it would aggressively market its blankets" are inadequate to establish the time of the alleged fraudulent activity.  (ECF No. 7, ¶ 11).  Collage also challenges the sufficiency of other fraud allegations in the complaint.  (*See id*. at ¶¶ 5, 12, 14, 52, 64).  Ramco counters that its complaint is specific enough to satisfy Rule 9(b), but also suggests that it is capable of providing greater detail in its pleading.  (ECF No. 13, PageID.334).

The court will hold in abeyance any ruling on Collage's motion as to the fraud count.  Notably, in its response brief and at the hearing on this matter, Ramco offered to amend its pleading to provide greater detail regarding its fraud claim. Federal Rule of Civil Procedure 15(a)(2) states that courts should grant leave to amend a complaint "when justice so requires."  Ramco has not previously amended the substance of its complaint,[1] and in the Court's view, under the present circumstances, allowing plaintiff to amend serves the ends of justice.  Therefore,

---

[1] The court previously ordered and allowed plaintiff to refile its complaint to comply with the typesetting requirements contained in L.R. 5.1(a)(3).  (ECF Nos. 4, 7).

the court concludes, without expressing any opinion as to the merits of Collage's

motion, that Ramco may amend its complaint solely to address any potential

deficiencies under Rule 9(b) within 14 days of entry of this Order.  Collage must

file its answer to any amended complaint within 14 days of its filing.  If Ramco

files an amended complaint, then the instant motion will be denied as moot.  If it

declines to file an amended complaint, then the court will issue its ruling on this

motion.

C.    <u>Unfair and Deceptive Trade Practices Act</u>

Ramco contends that North Carolina law applies to its Unfair and Deceptive

Trade Practices Act claim.  It claims that the following constitute unfair and

deceptive trade practices: Collage's misrepresentations regard the marketing and

production of blankets; Collage's withholding payment to Ramco based on a

disingenuous production schedule; Collage's intention to sell pillows at artificially

low levels because of its intention to withhold payment from Ramco; Collage's

failure to advise Ramco of the Cyber Monday Sale; and Collage's

misrepresentations during the negotiation of the SFA.  (ECF No. 7, Page ID.36-

37).

Collage seeks dismissal of the UDTPA claim, contending that because the

UDTPA claim mirrors Ramco's breach of contract claim, the SLA's choice of law

provision, which provides that the SLA is "governed and interpreted in accordance

with the laws of the State of Michigan[,]" (ECF. No. 9, Ex. 1, § IX.h.), should also

bar the UDTPA claim. *See Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc*.,

424 F. Supp. 2d 970, 979 (E.D. Mich. 2006) ("Michigan's choice-of-law rules do

not render forum selection and choice-of-law clauses irrelevant in tort cases related

to a contract."); *Citizens Bank v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,

2012 WL 5828623, at *5 (E.D. Mich. July 6, 2012) (under Michigan law, given

contractual choice of law clause, tort claim would also be governed by that same

law) (citing *Watkins & Son Pet Supplies v. Iams Co*., 254 F.3d 607 (6th Cir.

2001)); *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1139-40 (6th Cir.

1991) (where Michigan law applied to franchise agreement, Alabama plaintiff

could not state cause of action under Alabama law for fraud and misrepresentation

in order to claim punitive damages). Ramco argues, without authority, that the

language of the SFA is clear and it only applies to contract claims, which would

exclude the UDTPA claim.

Collage's argument carries the day. The choice of law provision at issue

here is nearly identical to that at issue in *Adelman's Truck Parts Corp. v. Jones

Transp*., 797 Fed. Appx. 997, 1000 (6th Cir. 2020). In *Adelman's Truck Parts*, the

parties' contract provided that "This Purchase Order shall be governed by and

construed in accordance with the laws of the State of Ohio." *Id*. The Sixth Circuit

concluded that, just as in *Moses*, *supra*, the choice-of-law provision governed the

agreement and any other disputes, whether contractual or tortious, that are directly related to it.  *Id.*  Accordingly, the Court of Appeals held that the defendant's counterclaim brought under North Carolina's UDTPA arose out of and was directly related to the parties' contract and was therefore barred by the choice-of-law provision.  The choice of law provision here is indistinguishable from that in *Adelman's Truck Parts*: "This Agreement shall be governed and interpreted in accordance with the laws of the State of Michigan without regard to its conflicts of laws principles."  (ECF No. 9-1, PageID.89).  As such, the UDTPA claim is similarly barred and must be dismissed.

### D.   Unjust Enrichment

Next, Collage moves to dismiss Ramco's unjust enrichment claim, asserting that such a claim cannot be pleaded in the alternative unless there is doubt as to the existence of a contract.  *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F.Supp.3d 824, 834 (E.D. Mich. 2014).  According to Collage, since Ramco's complaint plainly alleges the existence of a contract and the unjust enrichment claim is based on the same facts and circumstances, the unjust enrichment claim must fall.

In response, Ramco argues that it may plead unjust enrichment in the alternative.  That is, Ramco is entitled to recover damages if no contract exists because it provided a benefit to Collage and a resulting inequity has occurred.  *See Ajuba Intern., LLC v. Saharia*, 871 F.Supp.2d 671, 691 (E.D. Mich. May 14, 2012)

(denying 12(b)(6) motion to dismiss unjust enrichment claim because it could be plead in the alternative.); *Hennigan v. General Elec. Co.*, 2010 WL 3905770 *15 (E.D. Mich. Sept. 29, 2010) ("[U]nder Fed R. Civ. P. 8(e)(2), a party may plead a contract claim and an alternative claim for unjust enrichment."); *Date v. Sony Electronics, Inc.*, 2010 WL 3702599 *12 (E.D. Mich. Sept. 16, 2010) (plaintiffs can plead their claim for unjust enrichment as an alternative to their claims for breach of contract so long as questions of fact exist as to the existence of a claim based on contract).

The court finds that under the circumstances presented here – where no one disputes the existence of the contract – Ramco may not pursue an unjust enrichment claim.  As explained in *Bowlers Alley*, *supra*, under Michigan law, a claim of unjust enrichment or implied contract will not lie where an express contract governs the same subject matter.  *Id.* (citing *Fodale v. Waste Mgmt. of Michigan*, *Inc.*, 271 Mich. App. 11, 36 (2006)).  The cases Ramco cites do not change this analysis because their facts distinguish them.  For example, in *Date v. Sony Electronics*, *supra*, the plaintiff was permitted to plead unjust enrichment in the alternative because there was a factual question as to the existence of the claim based on the contract.  The "contract" claims in Date were based on express and implied warranties.  More specifically, the plaintiffs were permitted to plead an unjust enrichment claim in the alternative to their express and implied warranty

claims, premised on representations made in advertising and promotional materials, on which the plaintiff class members relied when they purchased certain televisions. Similarly, in *Hennigan v. GE*, the court decided that an unjust enrichment claim could proceed, again in the circumstance where a breach of express warranty claim was asserted in the context of the purchase of a consumer product. The warranty claims in *Date* and *Hennigan* were based on statements contained in user manuals, advertising materials, and similar documents that accompanied the purchase of a consumer product, not in a negotiated contract signed by both parties. In *Ajuba*, *supra*, the defendant denied the existence of any enforceable contract and thus, the court permitted the claim of unjust enrichment to proceed. The foregoing cases are fundamentally different from the present circumstance, which involves a negotiated contract signed by two sophisticated commercial parties, where neither party denies its existence or applicability. Accordingly, the court finds the analysis in *Bowlers Alley* to be persuasive and applies its logic here. Ramco's unjust enrichment is dismissed.

     E.    <u>Breach of Contract</u>

          1.    Maximum Order Volume

Collage asserts that, to the extent Ramco's breach of contract claims are premised on the SFA containing an upper limit of orders that Collage could place, any such claim must be dismissed. Collage maintains that the SFA does not

contain a maximum order volume.  Rather, it provides that Ramco "shall" fulfill the orders submitted.  (ECF No. 9-1, § IV.A.1).  And while there are forecasts, Collage claims that they do not cap Collage's orders because the Sales Forecasts "are not maximum estimates of Product Order volume."  (ECF No 9-1, Ex. B, § III.b).  Additionally, the SFA allows Collage to submit orders exceeding 120% of the Sales Forecast and requires Ramco to notify Collage within two business days of its plan to fulfill those orders.  (ECF No 9-1, Ex. B, § III.d).

Ramco insists that the SFA contains a maximum monthly volume capacity for each product.  (ECF No. 9-1, § IV.c.1.C, Ex. C).  It points to Table 2, which refers to the "maximum monthly volume capacity (Exhibit C) available to Collage."  (ECF 9-1, PageID.98).  Exhibit C provides that the maximum weekly volumes contained in Table 1 "establish the maximum volumes that Collage may forecast for each Product and Product Line each month."  Further, such maximums can be adjusted according to Collage's needs and prior agreement 90 days in advance for additional weekly capacity.  *Id.*[2]

---

[2]  To the extent Ramco relies on evidence outside the four corners of the parties' contract to support this claim, the court will not consider it for two reasons. First, this evidence pertains to a claim for which limited discovery was not permitted.  Second, Ramco has not made the case that the court should look to extrinsic evidence when interpreting this contract.  *New Hamilton Liquor Store, Inc. v. AmGuard Ins. Co*., 2020 WL 4220477, at *3 (E.D. Mich. July 23, 2020) ("When the words used by the parties are unambiguous and have a definite meaning, the court should not review extrinsic evidence to determine the parties' intent.") (citing *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 606-07 (1997).

In interpreting the language of a contract, the court must determine whether the contract is ambiguous. "If no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce the language as written, unless the contract is contrary to law or public policy." *New Hamilton Liquor Store, Inc. v. AmGuard Ins. Co*., 2020 WL 4220477, at *3 (E.D. Mich. July 23, 2020) (quoting *Harbor Park Mkt.*, *Inc. v. Gronda*, 277 Mich. App. 126, 130 (2007). The meaning of such clear and unambiguous contract language is a matter of law. *Id*. The court finds the language of the SFA to be plain and clear. Under the SFA, Ramco "shall offer for sale the Products listed in Exhibit A [blankets and pillows] and provide custom printing Services for said Products to Fulfill Product Orders submitted by Collage at Supplier's [Ramco's] processing facilities in Concord, NC." (ECF No. 9-1, § IV.a.1.). Ramco agreed to fulfill custom printing of "such quantities" of its made-to-order blankets and pillows "as Collage deems necessary to fill Product Orders." *Id*. The SFA also provides that "Collage may purchase such quantities of the Products as Collage deems necessary to fill Product Orders, and Supplier agrees to sell the Products to Collage." (ECF 9-1, § III). While Exhibit C sets forth maximum volumes *for the sales forecast*, it does not set forth a maximum order volume. The maximum volumes are only relevant to the credits to which Collage might be entitled under the SFA. The credits only apply to orders less than 120% of the sales forecasted volumes

provided by Collage.  This sets a maximum on how many credits Ramco might have to bear if it cannot fulfill the orders in accordance with the time frame set forth in the SFA.  If the orders exceed 120% of the sales forecast, the SFA directs Ramco to inform Collage as to when it can reasonably ship the excess orders. Accordingly, the SFA contemplates that Collage may order products exceeding the forecast and Ramco's claim that Collage breached the SFA by ordering products in excess of the sales forecast limits set forth on Exhibit C fails.

### 2.    Improper Sales Forecasts

Collage next argues that there is no contractual basis for Ramco's claim that Collage "fail[ed] to provide proper sales forecasts."  (ECF No. 7, ¶ 48(d)).  Collage points out that Ramco affirmatively recognized and agreed that "estimated forecasts are reasonable due to the 'print on demand' nature of Collage's business."  (ECF No. 9-1, Ex. B, § III.b).  Ramco further "acknowledge[d] and anticipate[d] some degree of uncertainty in Collage's forecasts because Collage works with third party marketing partners . . ."  (ECF No. 9-1, Ex. B, § III.b). Collage maintains that the parties' contract only obligate it to provide a forecast, and there is no allegation that it failed to do so.  Moreover, given that there is no "maximum" number of orders allowed under the SFA, Ramco's allegation that Collage failed to provide Ramco notice of a "Cyber Monday" sale, resulting in orders exceeding the "the maximum amount of pillow orders Collage could submit

under the" Agreement, should also be dismissed.  (ECF No. 7, ¶¶ 27, 48(e)).

According to Collage, even if it should have given notice of that event to Ramco,

there is no breach of contract because there are no damages.  *Orthopedic, P.C. v.*

*Allstate Ins. Co.*, 2017 WL 550559, at *5 (E.D. Mich. Feb. 10, 2017); *Buttermore*

*v. Nationstar Mortg. LLC*, 2017 WL 2306446, at *10 (E.D. Mich. May 26, 2017).

Next, Collage asserts that Ramco's claimed breach for "failing to time-shift the

production schedule to account for orders in excess of the maximum allowed under

the" SFA must fail because there is nothing in the SFA that imposes on Collage an

obligation to "time-shift the production schedule," nor is there any "maximum" of

allowed orders.  (ECF No. 7, ¶ 48(g)).

Collage's observation is correct; Ramco does not allege that Collage failed

to provide any forecasts, or that the forecasts exceeded 120% of the volume set

forth on Exhibit C.  Rather, Ramco's claims regarding improper sales forecasts

merely rehash its maximum order volume claim.  As a result, this claim also fails

because the SFA does not impose a maximum order volume on Collage.  Further,

the court agrees with Collage that the SFA does not impose on Collage any

obligation to "time-shift" the production schedule to accommodate orders in excess

of 120% of the sales forecast.  Ramco has failed to state a claim for breach of the

SFA in this regard.

As discussed above, there is no order volume limit in the SFA and any Cyber Monday sales that exceeded 120% of Collage's sales forecast were not subject to the credit scheme in the SFA. Collage says, therefore, that Ramco has no credit-related damages based on an alleged failure to provide notice of the Cyber Monday sale. However, the SFA does not limit damages to the credits incurred on late orders. Indeed, the contract specifies no limitations on damages for breach of contract claims. *See* ECF No. 9-1, § VIII ("THE FOREGOING [damages] LIMITATIONS SHALL NOT APPLY TO CLAIMS FOR BREACH OF CONTRACT OR CLAIMS FOR BREACH OF THE OBLIGATIONS OF CONFIDENTIALITY.") (emphasis in original). Section III.e requires Collage to alert Ramco of any major sales events and Collage admits that it did not so notify Ramco of the Cyber Monday sale. Presumably, the notice provision has a purpose and is not superfluous contractual language. Thus, damages can flow from the failure to provide such notice. At the pleading stage, the court must make all reasonable inferences in favor of the non-moving party. Accordingly, the court concludes that Ramco has plausibly alleged a breach of contract for failure to provide notice of the Cyber Monday sale.

3.      Force Majeure (Rule 56)

Under the SFA, a Force Majeure Event can create an exception to the

incurrence of credits for late orders.  (ECF No. 9-1, Ex. B, § II.b.2).  Section IV.a.6

provides as follows:

> In the event of a delay due to a Force Majeure Event, as
> described in Section IX(g) of this Agreement, Collage
> agrees to grant Supplier an extension of time to meet
> Fulfillment deadlines required by Exhibit B in
> accordance with the terms of the Force Majeure clause
> (Section IX(g)). If Supplier fulfills the requirements of
> the Force Majeure clause, Collage will not consider
> Supplier to be in default or subject to the upgraded
> shipping requirements set forth in Exhibit B for the
> duration of the Force Majeure Event.

(ECE No. 9-1, PageID.84).  Section IX.g defines such events and specifies that

performance is excused "on a day-to-day basis" for the duration of the event.

Ramco alleges that Collage breached the SFA by failing to recognize a Force

Majeure Event.  Specifically, the state of North Carolina was under a state of

emergency between December 8-11, 2018 due to a severe snowstorm.  The storm

caused Ramco to halt production at its North Carolina production facility during

that time.  (ECF No. 7, ¶¶ 32-36).  When Ramco invoiced Collage for work during

this time period, Collage maintains that Ramco did not calculate any of the credits

for late shipments.  (ECF No. 9-1, Ex. B, § II.a.1 and § II.a.2).  Instead, Ramco

passed through shipping charges (contrary to Ex. B, § II.a.1 (in Addendum 1):

"Supplier shall be responsible for the incremental" cost of the expedited shipping)

and did not apply late order credits (contrary to Ex. B, § II.a.2: "Supplier shall add a monetary credit…."). (ECF No. 9-3, Nowinski Dec., ¶¶ 3, 9, 18-20). Collage then calculated all applicable credits. (ECF No. 9-3, ¶¶ 18-20). For the invoice which included the period of the Force Majeure Event, Ramco invoiced a total of $623,704.19. Collage initially calculated $467,289.90 in credits to be applied against this invoice (in addition to another $2,963.60 in deductions for reprinted orders due to quality issues). Later, Ramco raised the Force Majeure Event and Collage re-calculated credits to account for the Force Majeure Event. That recalculation reduced the credits taken by $26,602 (for a credits total of $440,687). (ECF No. 9-3, ¶ 19).

Collage maintains that based on the foregoing events, Ramco committed the first material breach on this issue, by failing to calculate credits on the applicable invoice. Had it done so, the Force Majeure Event would have been properly accounted for. *Chrysler Realty Co., LLC v. Design Forum Architects*, *Inc*., 544 F.Supp.2d 609, 616 (E.D. Mich. 2008), as amended (Mar. 25, 2008), order corrected, 2008 WL 2245396 (E.D. Mich. May 30, 2008), and aff'd in part, 341 Fed. Appx. 93 (6th Cir. 2009). In that case, a party's failure to comply with a notice-and-cure provision of a contract deprived the plaintiff of the right to sue for breach of contract. Collage argues that Ramco's duty to first calculate and apply credits before invoicing Collage is analogous, and its failure to do so should bar its

action.  Regardless, Collage maintains that it has in fact calculated the proper credits to be applied to the subject invoice, taking in to account the Force Majeure Event period of December 8-10, 2018.

Ramco says that it did not calculate any late credits because it did not fail to meet a deadline under the SFA.  Thus, Ramco maintains that it was not contractually obligated to calculate credits since it was not late on any orders. (ECF No. 34-8, Fahmey dep, 137:25-138:19, 191:8-15; ECF No. 34-4, Fahmey dec., ¶¶ 30-32).  Rather, Collage's Cyber Monday sale (that was not disclosed to Ramco) resulted in an unexpected and massive surge in sales (13,559 pillows in one week) that far exceeded Ramco's production obligations under the SFA.  Once this occurred, Collage developed a priority production list that was designed to ship the orders based on the zip code.  *Id*. at ¶¶ 25-29.  Ramco produced every pillow in accordance Collage's priority production list.  *Id*. at ¶ 29.

Moreover, even if Ramco failed to properly apply late credits, it argues that this fact has no impact on the application of the Force Majeure provision.  The SFA defines a Force Majeure Event as "any event excusing a party's performance of its Agreement obligations."  (ECF 9-1, PageID.80).  The SFA further provides that performance is excused on a day-to-day basis while the event impacts production.  (ECF 9-1, PageID.89).  Ramco's only obligation triggered under the SFA was to notify Collage of the event, which it did.  All parties acknowledge that

December 8, 9 and 10, 2018 were force majeure days under the SFA.  (ECF No. 34-10, Nowinski 107:19-108:11; ECF No. 34-8, Fahmey Dep. 81:7-17).  Ramco maintains December 11, 2018 was also a Force Majeure day because the winter storm continued to impact Ramco's ability to manufacture and ship the product. *Id*. at 81:7-17.  Ramco says that Collage has not disputed Ramco's claim that December 11 was a Force Majeure day.  However, the Nowinski affidavit makes it clear that Collage only acknowledges that December 8-10 as force majeure days. (ECF No. 9-3, ¶ 7).

Ramco argues that Collage's reliance on *Chrysler Realty* is misplaced.  In *Chrysler Realty*, the court granted summary judgment because the plaintiff failed to notify the defendant of the defective condition at issue and provide them with an opportunity to cure.  There is no cure provision at issue here.  Rather, the only obligation Ramco had was to advise Collage of the force majeure event.  Ramco complied with that provision.  Thus, it says that Collage is attempting to insert an additional requirement into the SFA that does not exist.

On November 26, there was a Cyber Monday sale, which resulted in 13,559 pillow orders for the week of 11/26/18 and 5,915 for the week of 12/3/18. December 8-10, 2018 are the undisputed force majeure days.  On December 10, 2018, the parties established the modified production schedule, which Ramco says it met.  (ECF No. 34-12).  Collage says that it calculated the credits during the

Force Majeure days by adding one business day for production to the normal three-day fulfillment deadline for each force majeure day for each product Collage submitted that was originally due to ship on a force majeure day or that was submitted by Collage on a force majeure day.  (ECF 9-3, ¶ 10).  While Collage maintains that orders for which it charged all the credits were already late, it is not clear on this record how that it so, given Ramco's assertions, supported by affidavit, that all orders were timely shipped and thus not subject to any credits. The parties' competing stories present a classic case of a material factual dispute, precluding summary judgment.  For the court to accept one party's version of events over the other's would require a credibility determination, which is not permissible in the context of summary judgment.  *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (The court may not make credibility judgments or weigh the evidence.).  For these reasons, the court finds that there is a genuine issue of material fact precluding summary judgment.

4.      Production Schedule (Rule 56)

Collage contends that Ramco's assertion that it breached the SFA by

"modifying the production and distribution schedules" fails because Ramco did not

incur any damages as a result of those changes.  (ECF No. 7, ¶ 48(f)).  The

Complaint alleges that this occurred twice: on November 30 and December 10,

2018.  (ECF No. 7, ¶¶ 29-30).  Collage maintains that Ramco was not damaged by

the changes in the production schedule because it was already late on thousands of

orders.  Collage asserts that the December 10 communications via telephone and

email between the parties established a mutually agreed upon priority production

list to maximize the number of customers receiving their orders by Christmas.  At

this point, Collage says, Ramco had already incurred the maximum credits on

almost all pillow orders because it failed to timely ship products.  Collage also

asserts that the priority production list allowed Ramco the opportunity to produce

and ship orders that were not already late, without incurring any late order credits.

(ECF No. 9-3, ¶¶ 12, 14, 16, 17).  Accordingly, Collage maintains that to the extent

there were discussions on those two dates about the order in which late orders were

to be fulfilled, those discussions did not cause any damage to Ramco, i.e. the

application of an additional credit in favor of Collage.  (ECF No. 9-3, ¶ 15).

Further, Collage did not calculate and assess any credits for any orders it submitted

that exceeded 120% of its forecast.  (ECF No. 9-3, ¶ 16).  Because those

communications did not result in additional credits, Collage argues that there are no damages resulting from them, and no actionable claim for breach of contract.

In response, Ramco again maintains that it complied with all production requirements under the SFA and was not late on any orders.  (ECF No. 34-4, Fahmey dec., ¶¶ 17, 30-32; ECF No. 34-8, Fahmey dep. 191:14-15) ("...we were not late"); ECF No. 44-1, Fahmey dep. 115:10-115:17).  Ramco also contends that because of Collage's excessive orders, it advised Ramco not to upgrade any orders. (ECF No. 9-3, PageID.123, Nowinski Nov. 30, 2018 e-mail; ECF 34-8, Fahmey dep. 155:10-13; ECF 34-4, Fahmey dec. ¶¶ 18-19).  Ramco asserts that it regularly performed an analysis of all orders, and its analysis confirmed it was not late on any order and that it did not owe any credits.  (ECF No. 44-1, Fahmey dep. 109:7-111:16; ECF No. 34-8, Fahmey dep. 115:10-115:17, 137:25-138:19,  191:8-15; ECF No. 34-4, Fahmey dec., ¶¶ 17, 30-32 ("In December 2018, I had numerous discussions with Mr. Lee and Mr. Nowinski regarding Collage's payment to Ramco.  During these discussions, I advised Collage that Ramco was not late on any orders and that Ramco fully performed under the SFA.  I also advised Collage that Collage was not entitled to any credit on any orders under the SFA and that Ramco expected full payment set forth in the invoices it submitted").

Collage's position boils down to its claim that no damages flowed to Ramco from the changes in the production schedule because Ramco was already late and

thus, had already incurred the disputed credits.  However, Ramco's evidence suggests that it was deemed timely under the parties' agreed upon modified production schedule and therefore, no credits were applicable.  As with the Force Majeure claim discussed above, the court is unable to select one parties' version of events over the other without making an impermissible credibility determination. Accordingly, the court finds that a genuine issue of material fact exists regarding whether Ramco was properly assessed credits on the disputed orders.

## IV.   CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is **GRANTED** and its motion for summary judgment is **DENIED** as follows:

1.      Count II (Fraud) is **HELD IN ABEYANCE**;

2.      Count III (Unfair and Deceptive Trade Practices) is **DISMISSED** in its entirety;

3.      Count IV (Unjust Enrichment) is **DISMISSED** in its entirety; and

4.      Count I (Breach of Contract) is **DISMISSED** as to the claims that Collage breached the maximum order volume provision (¶ 48(b)), that Collage failed to provide proper sales forecasts (¶ 48(d)), and failed to time-shift the production schedule (¶ 48(g));

5.      The motion to dismiss is **DENIED** as to Count I (Breach of Contract) as to the claim that Collage failed to notify Ramco of the Cyber Monday sale (¶ 48(e)); and

6.      The motion for summary judgment is **DENIED** as to Count I (Breach of Contract) as to the claims that Collage failed to properly account for the Force Majeure event caused by the 2018 Winter Storm (¶ 48(c)) and that Collage failed to account for the modified production and distribution schedules set forth in the SFA (¶ 48(f)).

**IT IS SO ORDERED**.

Date: September 29, 2020                    <u>s/Stephanie Dawkins Davis</u>
                                            Stephanie Dawkins Davis
                                            United States District Judge